Our fourth case for argument today is Brooks against Kankakee. Mr. Flaxman. Thank you, your honor. May it please the court. Mr. Brooks is a police officer who works for the city of Kankakee. He was employed, he started working there I think in 1996. Over the course of time, he has complained on many occasions about his perception that the police department favors white police officers over black police officers. He was part of a lawsuit in 2003 that obtained an agreed order that the city promised to make some reforms. But he continued to speak out about his perception that as a minority police officer, he was being treated differently than white police officers. In 2014, he testified at a EEOC hearing and mentioned that there was a consent decree. Two years later, the chief included that testimony at the hearing as one of the reasons why he was threatening to fire Mr. Brooks if he continued to speak out about his perceptions of the way minority officers were treated. In 2016, Mr. Brooks spoke out at a hearing before the mayor about the police department's treatment of a white police officer. This was also included by the chief in his letter of 2016. And then a couple months later, at a meeting before the police and fire commission, Mr. Brooks spoke out again about this treatment of the white police officer, which he felt favored that officer because of his race. The chief included those three items in his letter that he sent to Mr. Brooks saying, stop it or you're going to be disciplined up to being discharged. Mr. Brooks included that letter in a complaint of retaliation with the EEOC or the Human Rights Commission and filed this lawsuit after he perfected his right to bring up a case in federal court. Mr. Spaksman, I'm going to stop you because I want to talk about the jury instruction. With respect to the jury instruction, given that there were three different statements at issue here, isn't this a sort of case that requires a mixed motive instruction? If the jury thought that Mr. Brooks had a reasonable good faith basis to make one or two of those statements, for example, but not all three, then wouldn't the jury have to decide whether Chief Regnier would have taken the same action based solely on the statement or statements that were baseless? Was the jury ever asked to make that kind of assessment? No, the jury was not asked. And I think that argument by the defense or that argument that the defense has been waived and isn't before you. Both parties proposed a disjunctive instruction before trial that if the jury found that either A, B, or C, the testimony at the EEOC hearing, the comment about the, either of the two comments about preferential treatment for the white police officer that Mr. Brooks could have had or was objectively valid, that the chief then was violating Title VII. What do you mean when you say that isn't before us? Well, oftentimes this court applies a waiver rule that when issues are not raised before the trial court about improper jury instructions, they cannot be raised on appeal. In this case, nobody asked for a mixed motive instruction, which would have asked the jury to say, but for A, B, or C, the burden then would have been on the defense to prove that the discipline would not have been imposed. And that was never posed in the pleadings or in the jury instructions or by any of the judges. Also, I don't think that's raised by the appellee in their brief in this court. So if I think that that jury instruction, that the jury instruction that was given concerns me, and I think that a mixed motives instruction should have been given, what's your position then? Well, I think your honor could reverse and remand for a new trial and suggest to the district court that he or she, if it's reassigned, give thought to a mixed motive instruction as in free speech cases or ADA cases. I would not reject a reversal on that ground, your honor. But the other thing that's important in a mixed motive instruction, it's the defendant's burden to show that the decision maker would not have imposed or threatened to fire Mr. Brooks for any of those three things that were in there. And that's a very, that was not raised at trial. I think it would be, I would be distressed if the defendants were given a second bite at the apple to do the case right. But I think before we get to the new trial, the question is... Mr. Flaxman, I have another preliminary issue for you. How did this stop speaking out about race discrimination because she'll get fired? Also, that's another issue that was... The question is, how is that harm? Is there an allegation, for example, that he would have said something that he did not as a result of that letter? Oh, he would have continued to speak out about... No, Mr. Flaxman, please be careful. I'm not asking for your testimony. I'm asking whether there is an allegation in the record of this case, backed up, say, by testimony from Brooks, that he would have said something which as a result of this letter, he did not say. I do not know the answer to that question as I sit here now, Your Honor. Isn't that something that needs to be in the record? It does if it's preserved and it's not preserved, it's not raised by the... Well, unfortunately, whether there is harm is a jurisdictional question. If there is no harm, there is no standing. And the plaintiff always has to establish harm or we don't have jurisdiction under Article 3. If there is absolutely nothing in the record suggesting harm, we have a problem. So the suggestion, and I believe it's a very strong suggestion of harm, comes from the Chief's letter, which says, if you keep doing this, you're going to get fired. That could have been a jury question. The district judge resolved that on summary judgment. There's no issue on appeal by the appellee that that was incorrect. And I think Your Honor should accept the district court's finding that there's harm and move on to the merits of the case. I would be glad to comb through Mr. Brooks's deposition and submit a 28-J letter, I believe, to point out those page references if there is anything that's directly responsive to Your Honor's question. If there are no further questions, I will reserve the rest of my time. Thank you. Thank you, Mr. Flaxman. Mr. Matthews. Good morning, Your Honors, and may it please the court. I'm David Matthews and I represent the city of Kankakee in this case. I'm going to focus my argument on three things that do not make an appearance in the plaintiff's pleadings. They are, first of all, the word credibility. Secondly, Seventh Circuit Pattern Jury Instruction 3.02, which District Judge Bruce did his best to adapt to the facts of this case as they were presented at trial. And third, the complete lack of evidence that any similarly situated person to Mr. Brooks was treated differently. Credibility matters because much of this is an appeal from a jury verdict, and it is important to emphasize just how— Counsel, let me ask you the same question that I just asked to Mr. Flaxman. Is there any evidence in the record that Brooks wanted to say something further but refrained from doing so as a result of the reprimand? Mr. Brooks did not say that at all in his deposition. He claimed in his deposition to have experienced some kinds of emotional distress or worry in light of the letter that's really best described as a written reprimand. That's how it was referred to at trial as the reprimand letter. It is functionally indistinguishable from other letters of reprimand that the chief sent. He even testified to a couple of those at trial. So there is no testimony in the record as to something Mr. Brooks would have said. But for this letter, there is testimony that he claims to have experienced some unspecified emotional distress for which he never sought treatment. Can that be viewed as harm? The district judge thought so, and I'm not challenging that level of harm. I wouldn't think— Unfortunately, Counsel, what the parties are challenging is not important when there's a jurisdictional issue. We have a question about whether there is a case or controversy about this. And now both sides have said, well, I haven't raised that, so you shouldn't reach it. This is something we have to reach, even if the parties stipulate to federal jurisdiction. Certainly agree with you with respect to jurisdiction and subject matter jurisdiction. The court can always raise that sua sponte, but to go to Judge Rovner's question, I think it would be correct that, you know, even if emotional distress in some unspecified level isn't harm, functionally this letter is a letter of written reprimand. And I think it would be correct that a letter of written reprimand in an employment case does quantify as harm. It's not particularly significant. As a matter of law, I'm very surprised at that position. Suppose we don't have a letter of reprimand, but the city just says, the plaintiff has said X, Y, and Z. We believe that X, Y, and Z are all false. Yours sincerely, Kankakee Police. Is that a litigable question? There's a doctrine that the government has a right to speak on its own. The government speech doctrine says that's not something that courts can upset. The question I'm asking is, functionally, how is this letter of reprimand different from government speech? Functionally, one difference, Your Honor, is that it goes into Mr. Brooks's employee file, along with other letters of reprimand that he's gotten or that other employees would have gotten. That is something, as Your Honors know, it can always be obtained in litigation. It's something that is at least going to could be considered. Look, if you have a plain government speech where the chief of police says, Brooks has said X, all three of those statements are false. That's my view. That's a matter of public record. People can consider it. They can think about it in the future. You're surely not saying that despite the government speech doctrine, that thing can be litigated. The Supreme Court has held otherwise. That's not subject to judicial litigation. I would certainly say that if the government makes speech, if, for example, Your Honor, if the former chief, Larry Rainey, would have made such a statement at a press conference or put something on the website or put it in some, I don't believe he has a Twitter account, but if he were to have tweeted. So, look, I'm just trying to pin down how this letter of reprimand is different from the statement at a press conference on the public record. The way in which it's different is that the letter of reprimand says, and if you say something like this again, you'll be fired. Now, there wasn't any further discipline. So, the way in which it's different is that it can be viewed as, well, the extreme contention would be this is a prior restraint on speech, that it threatens a consequence which the First Amendment doesn't allow. And that then leads to the question whether the plaintiff has asserted that he wanted to make such a statement, but as a result of this prior restraint was deterred. That's what gets us into harm. And that's why I asked Mr. Flaxman. That's why I'm asking you whether there is any assertion by this plaintiff in a filing in court, in a deposition, in testimony, anywhere that he wanted to do that but was deterred. Judge, I believe there is no assertion to that effect by this plaintiff. I think I can say that emphatically to your honor, I would respectfully disagree with your honor's position that that is decisive here. I would submit to the court that the difference with respect to government speech here is this is, it is functionally a reprimand that goes into a person's employee file. It is certainly the sort of thing that could be and generally are considered in future discipline. You perhaps, your honors, have seen, you know, employee discipline comes along. I say, Mr. X, you're now going to be disciplined Y because you did Z. And oh, by the way, you also have prior discipline 1, 2, and 3. And this is all relevant. So I would submit to the court that, again, while I would, you know, if this were a damages case, I would certainly be arguing to the jury quite strongly. The harm is minimal, very low. There is a harm there. And that's the distinction I would draw for the court. Do you think that we can infer from plaintiff's history of making critical statements that he would have kept making such statements but for the warning letter, which tells him basically, you know, more of this fella and you're out of here. I mean, you agree that this is a true reprimand letter. This better stop. You better shut up. Judge, I would partially agree and partially disagree. I would agree with your honor that one, I think based on the record, and I'll get to that in a moment, could agree that Mr. Brooks might have kept saying certain things. I would respectfully disagree with your honor's characterization and both plaintiff's counsel's claim that this is you better shut up or you can't speak out about discrimination. Nowhere in the letter does it say that Mr. Brooks can't have an opinion or that he can't file future complaints. And there was even testimony, even Mr. Brooks himself admitted to that at trial. What the letter warns Mr. Brooks to do is to stop making false statements of fact. And the reason your honor, I think one actually could infer Mr. Brooks may well have kept saying things is that, and this goes to a critical jury issue too, when it comes to credibility and motive, because in the spin given by the plaintiff on appeal, the position given is that, well, Mr. Brooks only mentioned this non-existent consent decree one time in 2014. But the testimony from Chief Rainey and Lieutenant Passwater was that even though after Mr. Brooks made this claim in 2014, he was corrected and said there isn't a consent decree, there was an agreed order, it expired. Mr. Brooks nevertheless repeated in the February 2016 meeting before the mayor and in the April 2016 meeting before the board of police and fire commissioners, the Lieutenant Passwater, was he once again said, even having been told there's no consent decree, he said again that the Kankakee Police Department was subject to a consent decree, even though- Well, you know, Mr. Brooks referenced to a consent decree rather than the agreed order in his testimony, either before the EEOC or the Department of Human Rights, or I find it hard to understand why the city keeps saying this was a baseless statement, made in bad faith. Lawyers might or might not appreciate the difference between an agreed order and a consent decree, but how can a lay person truly be charged with bad faith conduct in using those two terms interchangeably? Judge, in response to that, Mr. Brooks isn't just a lay person, neither is Chief Rainey. They are both police officers, and as Chief Rainey testified, that idea of a toward consent decree has a very specific meaning in the law enforcement world, but to get to a deeper issue, Your Honor, certainly a jury would have been entitled to take the jury. You might have reached that conclusion. A juror certainly could have decided that Mr. Brooks had a reasonable good faith basis to make his statements. They could have said it was an honest mistake, and they could have found for him. There's plenty of test- As the district judge put it very well, if the jury would have believed Mr. Brooks, both as to what he said and why he said it, the jury could have found for him, but Mr. Brooks, they weren't required to agree with him. It is fundamentally about motive, and there's a second half to the consent decree, Your Honor. The agreed order that Mr. Brooks says he was referring to expired years before, and he never brought that up. He kept saying the same thing, Your Honor, multiple times after being corrected, and I would submit to the court that a jury can certainly infer, just like a citizen can infer, if someone makes an accusation, is corrected about the facts, and then continues making the same accusation over and over and over again without coming forward with any new evidence, a jury can consider that person doesn't have a reasonable good faith basis in what they're saying, and so that is one of- Again, Mr. Brooks said otherwise. He said he only made that statement once, but this is one of many factual disputes the jury was entitled to to address very briefly the question of the jury instruction. There's two issues here. One, the reasonable and good faith standard. That is from a pattern jury instruction. It is something that comes from the Mattson case and the Hatmaker case. It has been the law of the circuit for a long time, and the plaintiff is essentially, in his reply brief, all but conceding that and asking for a reheat, asking this court to reconsider its precedent. Really, the argument with respect to the reasonableness and good faith is the exact same argument that was raised in the plaintiff in Mattson, tried to distinguish between the opposition and participation clause, and this court said no, and the Hatmaker case, and I'll direct you to the page, furthered that rejection at 619 F3rd at 745 to 746, and they also gave reasons for that textually, and I would just simply refer you to there. The question of the mixed motives, the plaintiff certainly could have asked for that jury instruction. He didn't. This court could certainly recommend it in an opinion and suggest it might be a good idea in the future, but that accurately state the law. They don't have to be perfect, and the critical issue here is causation. What caused this written reprimand, and one of the few things the plaintiffs and the defendant agree on is that the standard is but-for causation, and the judge was attempting to articulate, and he did articulate the but-for standard in the jury instructions, and indeed, nowhere in the plaintiff's brief or in their oral argument do they articulate a way to satisfy the but-for causation standard if all of Mr. Brooks's statements were not, in fact, unprotected, and finally, Your Honor, there hasn't been any argument on to the summary judgment ruling by the judge. Ultimately, it's in the briefs, but the disparate impact claim was raised at the last second with no warning that it was there. The district judge applied that very well. As far as the summary judgment standard, the plaintiff was never similarly situated to other employees, and that's why his failure to promote claim was properly dismissed. I've got, like, 20 seconds left. Does the court have any questions? I'll take that as a no and yield my last 10 seconds. Thank you, Your Honors, for your time. Thank you, Mr. Matthews, for those seven seconds. Mr. Flaxman, anything further? Yes, Your Honor. The argument about the but-for instruction not having been proposed by plaintiff, it's important to note that if we had proposed a but-for instruction, the jury would have been told that if it found that either one, two, or all three of the incidents were the but-for cause of the letter-threatening discharge, that plaintiff would win. That's conic where I think there was one question that was entitled to free speech protection, but 13 or 14 were not. We only have to prove one in a typical but-for instruction. The question about standing in Article III is a question that has not been developed in the record in this case. If it had been raised in the district court, either sua sponte or by the defendants, the parties would have had an opportunity to present evidence on that issue. We did not. We did make the argument, well, there is an argument that you could infer harm that he stopped speaking out about his perceived racial discrimination because he was threatened with being fired. The other argument, which is also not developed in this record but is there, is that in Title VII, the Congress established a cause of action for retaliation, which the Supreme Court has construed as whether the retaliatory acts would dissuade someone else, a reasonable employee, from speaking out about discrimination or complaining to the EEOC or a state agency about a retaliatory act. And then the question that would be raised, well, that's harm to someone else. It's not harm to the plaintiff. And if this had been raised in the district court, we would argue that Congress intended to allow the plaintiff to raise the standing of others to get into court to complain about discrimination, retaliation. Thank you, and I'll yield my three minutes and 49 seconds. Thank you very much, Mr. Flaxman. The case is taken under advisory.